# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SHAUN PROFIT, <br><br> Plaintiff, <br><br> v. <br><br> SALEH OBAISI; ANN DAVIS; SARAH MAYS; NAVEEM NAGPAL; MICHAEL LEMKE, <br><br> Defendants. | No. 14 C 4305 <br><br> Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Shaun Profit, a prisoner in the custody of the Illinois Department of Corrections, alleges that staff and medical service providers at Stateville Correctional Center were deliberately indifferent to his injured ankle. *See* R. 61. Sarah Mays, Naveem Nagpal, and Warden Michael Lemke have moved to dismiss Profit's claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 63. For the following reasons, their motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

I.  **Medical Condition & Care**

Profit resided at Stateville from 2001 until December 23, 2014. R. 61 ¶ 11. On November 12, 2012, he twisted his ankle playing basketball. *Id.* ¶ 12. Profit alleges that he "was unable to support himself on his ankle" after the injury occurred. *Id.*

Profit was seen at Stateville's healthcare unit immediately after he was injured. *Id.* ¶ 13. He alleges that he was diagnosed with a "chip fracture in his ankle." *Id.* He was provided ice, crutches, Tylenol, and a lay-in permit for two weeks. *Id.* He alleges he suffered from "extreme pain and swelling," *id.*, and "continued to experience extreme pain and difficulty in walking and participating in daily activities." *Id.* ¶ 14.

2

Ten days after his injury, Profit was examined by Dr. Obaisi, Stateville's medical director, who ordered an x-ray. *Id.* ¶ 15. The x-ray confirmed that Profit suffered from a chip fracture in his ankle, and Dr. Obaisi prescribed Tylenol and Naprosyn to address Profit's pain. *Id.* Profit had another x-ray on December 2, 2012, and was diagnosed with swelling around his lateral malleolus, or ankle bone. *Id.* ¶ 16. Three months later, Profit had a third x-ray. *Id.* ¶ 17. Profit alleges that no additional treatment was provided as a result of either of these two subsequent x-rays. *Id.* ¶¶ 16-17.

Profit continued to experience pain in his ankle, and he again saw Dr. Obaisi on June 17, 2013. *Id.* ¶ 18. Dr. Obaisi prescribed a cortisone injection and administered an injection of Depo-Medrol Lidoderm on June 26, 2013. *Id.* ¶¶ 18-19. Profit alleges that this injection "increased the severity of pain and swelling in [his] ankle." *Id.* ¶ 19.

Several days later on July 5, 2013, Profit sought medical treatment from Defendant Sarah Mays, who Profit alleges is a "medical technician" at Stateville. *Id.* ¶ 21. Profit alleges that Mays responded to his request for treatment by saying that she would not provide treatment for him because she was not "his" medical technician. *Id.* Profit makes no other allegations regarding Mays.

Profit also alleges that Defendant Naveem Nagpal sent him to the healthcare unit on "numerous occasions," but that he was never seen by a medical professional on those occasions. *Id.* ¶ 22. Profit makes no other allegations regarding Nagpal.

On July 23, 2013, Profit was examined by Defendant Dr. Ann Davis. *Id.* ¶ 30. Dr. Davis referred Profit to Dr. Obaisi. *Id.* Profit saw Dr. Obaisi on July 31, 2013, and Dr. Obaisi prescribed an MRI and ankle brace. *Id.* ¶ 31. Profit received an ankle brace that was too small. *Id.* ¶ 32. He returned it and never received another. Profit never received an MRI. *Id.*

Profit saw Dr. Davis again on December 30, 2013. *Id.* ¶ 33. Dr. Davis prescribed physical therapy and Mobic to address Profit's pain. *Id.* Profit received physical therapy several times a week from April 7, 2014 until May 21, 2014. *Id.* ¶ 34. Profit alleges that neither the Mobic nor the physical therapy improved his condition. *Id.* ¶¶ 33-34.

Profit saw Dr. Obaisi again on July 3, 2014, and received a fourth x-ray. *Id.* ¶ 35. Profit also received another ankle brace that did not fit. *Id.* On November 3, 2014, Dr. Obaisi prescribed Indocin and ordered a new ankle sleeve. *Id.* ¶ 36. Profit alleges that he did not receive the ankle sleeve. *Id.* Profit was transferred out of Stateville on December 24, 2014. *Id.* ¶ 37.

## II.   Grievances

On June 27, 2013, the day after Dr. Obaisi administered the injection of Depo-Medrol Lidoderm, Profit filed an emergency medical grievance regarding the care he was receiving for his ankle. *Id.* ¶ 20; *see also* R. 61-1. Profit filed a second emergency grievance on July 12, 2013. R. 61 ¶ 23; *see also* R. 61-2. Profit alleges that he also filed an additional three non-emergency grievances. R. 61 ¶ 24.

Warden Lemke denied Profit's emergency grievances. *Id.* ¶ 27. As a result of that denial, the grievances were transferred to the Administrative Review Board. According to Profit, the Board returned his emergency grievances and requested that he "provide a copy of the offender's grievance and a copy of the response from the Chief Administrative Officer." *Id.* ¶ 28. Profit alleges that he could not comply with this request because he filed both grievances as emergencies and no response from a Chief Administrative Officer is required under such circumstances. *Id.* ¶ 29.

**Analysis**

Profit alleges that Defendants knew that he "had difficulty in walking and participating in daily activities," R. 61 ¶ 41, and "deliberately disregard[ed] [his] serious need for medical treatment" of his ankle. *Id.* ¶ 40. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To establish a deliberate indifference claim under this standard, a plaintiff must show (1) that the plaintiff suffered an objectively serious risk of harm, and (2) that the defendant acted with a subjectively culpable state of mind in acting or failing to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

**A.   Nagpal**

Profit's allegations against Nagpal do not plausibly allege that Nagpal was deliberately indifferent to Profit's medical condition. First, Profit's allegations are insufficient to make it plausible that Nagpal was aware that Profit was suffering

5

from an objectively serious injury. Profit had suffered the injury months before, and had received treatment in the meantime. Although Profit's allegations regarding his ankle's condition may be sufficient to make it plausible that he suffered from an objectively serious medical condition, Profit has not alleged any facts to indicate that Nagpal was aware of this condition. Absent such allegations, Profit's claim against Nagpal must be dismissed.

Moreover, Profit merely alleges that Nagpal directed him to the healthcare unit. Nothing about this allegation indicates that Nagpal disregarded Profit's medical condition. To the extent that it could be said that Nagpal disregarded Profit's condition by failing to ensure that he was attended to when he reached the healthcare unit, that would be no more than a negligence claim that does not rise to the level of a constitutional violation. Thus, Profit's claim against Nagpal is dismissed.

**B.      Mays**

Profit's allegations against Mays also do not plausibly allege deliberate indifference. As with Profit's allegations against Nagpal, Profit has failed to allege facts that make it plausible that Mays was aware that Profit suffered from an objectively serious medical condition. Profit alleges that he told Mays that he was suffering from pain and swelling in his ankle. Although he alleges generally that his injury made it "difficult[] [for him to] walk[] and participat[e] in daily activities," he does not allege that he told Mays about these difficulties or that his physical condition was such that these difficulties would have been readily apparent. Mere

6

allegations of pain and swelling are insufficient to show that Mays would have known that Profit's ankle injury might "result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "[N]ot 'every ache or pain' is sufficient to constitute a serious medical need." *Slate v. Lemens*, 400 Fed. App'x 109, 112 (7th Cir. 2010) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). Rather, "ailments for which many people who are not in prison do not seek medical attention" cannot form the basis of a constitutional violation. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Profit's allegations about his statements to Mays do not indicate that Mays should have inferred that Profit was suffering from anything more than everyday pain. Since Profit has not alleged that Mays should have realized he suffered from an objectively serious medical condition, her decision not to tend to Profit's complaint because she was not assigned to do so does not rise to the level of deliberate indifference. Thus, Profit's claim against Mays is dismissed.

**C.  Warden Lemke**

A plaintiff's allegations against a prison official can only satisfy "the personal responsibility requirement of Section 1983 if the conduct causing the constitutional deprivation occurs at [the official's] direction or with his knowledge and consent." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). "That is, [the official] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id*. Thus,

although a prison official is "entitled to relegate to the prison's medical staff the provision of good medical care," *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), "nonmedical officials can be chargeable with . . . deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett*, 658 F.3d at 755.

Mere receipt of grievances from a prisoner is insufficient to establish that a prison warden was personally involved in any deficient medical care provided to the prisoner. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Neely v. Randle*, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013) ("If there is 'no personal involvement by the warden [in an inmate's medical care] outside the grievance process,' that is insufficient to state a claim against the warden." (quoting *Gevas v. Mitchell*, 492 Fed. App'x 654, 660 (7th Cir. 2012))).[1] However, written notice to prison

---

[1] *See also Brown v. Wexford Health Sources.*, 2014 WL 257552, at *3 (N.D. Ill. Jan. 23, 2014) ("[The Warden's] refusal to consider two emergency grievances as emergencies, which is all Plaintiff's complaint alleges even under a liberal construction, by itself, does not indicate that [the Warden] caused or participated in Plaintiff's alleged inadequate medical care and does not state a claim."); *Foster v. Ghosh*, 2013 WL 3790905, at *4 (N.D. Ill. July 19, 2013) ("[The Warden] is not liable under the doctrine of deliberate indifference for simply serving in his administrative role at the Stateville Correctional Center."); *cf. Jones v. Drew*, 221 Fed. App'x 450, 454 (7th Cir. 2007) (affirming a grant of summary judgment because "[a]lthough

8

administrators may form the basis of a deliberate indifference claim, if the plaintiff can "demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755.

Profit's allegations fail to plausibly demonstrate that his grievances provided such notice to Warden Lemke. By the time Profit filed his grievances, he had received three x-rays and several different pain medications. This treatment occurred over an extended period of time during which Profit alleges that his condition did not improve. It may be that discovery will show that the treatment regimen provided by Dr. Obaisi and Dr. Davis failed to comply with the Eighth Amendment. But Profit was certainly not being "completely ignored by medical staff," *Arnett*, 658 F.3d at 756, and Warden Lemke was entitled to rely on the medical judgments supporting the treatments Profit alleges he received. *See id.* ("[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). The Seventh Circuit has affirmed district court dismissals of similar allegations. *See Adams v. Durai*, 153 Fed. App'x 972, 975 (7th Cir. 2005) ("An administrator does not become responsible for a doctor's exercise of medical judgment simply by virtue

---

[the plaintiff] mailed a complaint to [the Warden] and filed a grievance at [the prison] describing his frustration with his treatment, there is no evidence that [the Warden] personally received or read these communications since he delegated the review of prisoner complaints to others within his office."); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (affirming a grant of summary judgment because "[t]he fact that [the plaintiff] sent a letter or letters to [the IDOC Director] is insufficient to create a genuine issue of material fact regarding defendant Snyder.").

9

of reviewing an inmate grievance, and that is all [the plaintiff] alleges here."); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005) ("We do not think [the prison official's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference."). Accordingly, Profit's claim against Warden Lemke is dismissed.[2]

## Conclusion

For the foregoing reasons, the motion to dismiss made by Nagpal, Mays, and Warden Lemke, R. 63, is granted without prejudice. Profit is granted leave to file a second amended complaint by April 22, 2016 if he believes he can cure the deficiencies described by this opinion and order. If Profit does not file a second amended complaint by that date, the Court's dismissal of Profit's claims against Nagpal, Mays, and Warden Lemke will become dismissals with prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 17, 2016

---

[2] It is unnecessary for the Court to address Defendants' contention that Profit failed to exhaust his administrative remedies to dispose of this motion by Nagpal, Mays, and Warden Lemke. Dr. Obaisi and Dr. Davis are free to raise that argument again on any future motion, but the Court expresses no opinion on that issue at this time.